Daniel Skarr and Emily Cohn on the phone. Daniel Skarr present, Your Honor. Emily Cohn is also present, Your Honor. Excellent. Thank you very much. So, Mr. Skarr, we'll hear from you. Thank you. May it please the Court, I am Daniel Skarr, attorney for plaintiff's appellant Heather Plainse. This case is on appeal from the decision of the United States District Court, Eastern District of Wisconsin, which affirmed the administration's denial of Ms. Plainse's social security disability benefits. Ms. Plainse has a long, troubled medical history that began right at her birth, when she was born with an abnormal narrowing of the aorta, which required surgical correction as an infant. And then at about two years of age, she was found to have an additional rare and double ventricular output congenital heart condition, and again went under the surgical repair of this issue. Then at three years of age, she was diagnosed with juvenile rheumatoid arthritis, or RA, and was nearly immobile due to her symptoms. Over the years, the primary physical symptoms of her RA were treated with a number of specific medications for RA, and then in March of 2013, she suffered a stroke and then was placed on blood thinners, and from that point in time, she has been taking those blood thinners as well. She shifted her treatment, due to all the complications she had with all her medical treatment, to the Mayo Clinic in Rochester, Minnesota, and began treating with Dr. Kostner, who was a rheumatologist for her RA, and also with the cardiology clinic there. Her RA began to flare in 2015, with Dr. Kostner noting severe joint pain and severe fatigue, and she was losing effectiveness of her Embril, which is a specific RA medicine. She was also admitted to the local ER with severe fatigue that year and was seen by specialists at the University of Wisconsin twice in 2015, again for her severe fatigue portion of her RA. Let me ask you, Mr. Skahr. She certainly has had her health problems over the years, but that's not quite the question that the administrative law judge has to answer. Instead, the administrative law judge has to decide whether, despite those problems, she retains some ability to work. In this instance, this is a Step 5 case in the national economy. And one of your complaints about the outcome that the administrative law judge reached, as I understand it, is you say he didn't consider her severe fatigue. But I want you to explain to me why the discussion that appears at page 8 of 12 of the ALJ's opinion isn't a full consideration of her fatigue, not with the conclusion that you wanted, but it begins, there's a paragraph that begins, as for the claimant's complaints of fatigue, the record suggests it could have been related to low iron, hypothyroidism, he goes on to some other things, and he comes to the conclusion that it's redressable. And so even when people have problematic conditions, if it can be addressed through medication or through other measures, the ALJ is entitled to say that's not something that prevents you from working. So on what ground do we disregard what the ALJ said about fatigue? And that's a good point, Your Honor. That's actually dealt with starting page 20 of Ms. Plansky's brief. When the judge throws that out there, he ignores a lot of things, in fact, in there, because she has a combination of diagnoses that are considered. Of course, fatigue is a subjective symptom, obviously, and it's really hard to measure fatigue medically. But she has rheumatoid arthritis, which is severe fatigue, by the Mayo Clinic and a Mayo Clinic doctor is a very prominent symptom, and she's been complaining of that. I mean, it cost her, she tried to work many jobs. She had tried to work about nine different jobs in the five years prior to putting her disability. But her fatigue being the primary factor, and I'll get back to some of the other things you discussed, it kept her from not only completing part-time employment for nine different attempts, a work attempt, but she even tried to go to college, which she couldn't even perform because she couldn't get back and forth, and her fatigue was just too much for her to even attend college classes. But she has a lot of other diagnoses that would help define that fatigue. She has hypothyroidism, low iron deficiency, and Hashimoto's disease, which in combination of rheumatoid arthritis certainly can produce the symptoms of severe fatigue, as her rheumatologist, a Mayo Clinic-trained rheumatologist, found was her most significant factor. And the judge talks about a few of those things, but I think each one of those is very well distinguished in my brief from page 20 all the way through page 22. So you mentioned a lot about the one opinion from Dr. Koster, but the ALJ notes that even Dr. Koster had a follow-up. I'm trying to look at this first date, but he notes that in May of 2015, the hypothyroidism was noted as improved, and so there's nothing that says the ALJ has to go with the most pessimistic assessment, is there? No, Your Honor. I mean, it's a substantial evidence argument, obviously. I mean, the only objective test I think that you can really say is she was interested in finding out this fatigue, so she went to other places, including the University of Wisconsin, and then she had a treadmill test done, which is an objective test, and she tested extremely low on the tolerance for endurance, and her fatigue just put her well, well below any VO2, which is the output they use for the treadmill testing, to show that her exercise tolerance and her fatigue was actually objectively tested and shown to be far, far below what it should have been for somebody her age. Okay. I guess, you know, your burden is to somehow show us that given the standard of review, the substantial evidence standard of review, as you correctly noted, you know, why we, you know, what's the weak point, or what's the legal error, or what is it here that entitles her to reconsideration by another agency person? Well, of course, just the substantial evidence argument is only one of them. We have other arguments as well, but the fact that the ALJ is required to use a bunch of different factors when assessing the expert opinion of a medical specialist, so she's someone like Dr. Koster, who's a rheumatologist with, you know, like I said, the Mayo Clinic, and the judge did not apply the factors that need to be applied to properly consider the medical opinion of Dr. Koster, much less, like I said, much of the evidence in the opinion ignores the fact that she has the severe fatigue. Yeah, it says it gets the old soundbite approach to evidence evaluation where the judge just kind of picks and chooses but ignores a lot of evidence that's very supportive of the fact that her RA and severe fatigue are debilitating that keeps her from performing full-time employment, which is the standard. Okay. I mean, if you'd like to save a little time, you had indicated a minute. You're sort of more like at the two-minute mark, but it's up to you. Yes, Your Honor. I wanted to discuss that quickly, then we're running out of time. Quickly, ten minutes. The second argument, which is the function-by-function assessment, this issue was actually just ruled upon in Jeske last month by the Seventh Circuit, and I just wanted to cover the fact that that decision didn't note the SSRs and their binding effect, the fact that the SSRs are binding on all components of not only Social Security Administration but as courts adjudicating them, and there's Halleck's reference in my brief as well as Nelson, Lauer, Price, and Johnson, who stand for this circuit, who have also at times acknowledged that fact. And the other fact that the Court of Appeals reviews disregarded decisions de novo, so it's the ALJs here we're looking at. And if you're not going to follow the SSR, which requires the function-by-functions assessment, then you have to have an acquiescence ruling, or what's called an AR, that creates an express exception to how the ruling is considered by the circuit court. And this is explained in CFR 40235. I want to quote that. ARs are published under the authority of the Commissioner of Social Security. The purpose of an AR is to explain how SSA will apply a United States Court of Appeals circuit court ruling, holding this in conflict with SSA's interpretation of the provision. We understand that. So you're just about out of time, so we'll stop here. Okay, thank you, Your Honor. Okay, thank you. Ms. Cohn. Thank you, Your Honor. May it please the Court, my name is Emily Cohn on behalf of the Commissioner. This Court should affirm the Commissioner's decision because substantial evidence supported the ALJ's determination that Ms. Plainzee was not disabled. Your Honor, the ALJ did not wholly dismiss the allegations or complaints of Ms. Plainzee, nor did he find that her impairments did not limit her functional abilities. Rather, he properly analyzed the evidence and found the degree to which Ms. Plainzee's impairments limited her functional abilities would not preclude all work. Important in this case is that the ALJ put very strict restrictions on Ms. Plainzee's functional abilities. So, Ms. Cohn, can I ask you, in connection with the ALJ's overall assessment of Ms. Plainzee's capability to work, should the ALJ have not explained in greater detail why her fruitless efforts to obtain and maintain work shouldn't be regarded as pretty good evidence that she really can't make it, you know, through a normal 8-hour day, 40-hour work week? Yes, Your Honor. So while that was Ms. Plainzee's testimony, the ALJ has to look at the record as a whole. And one of the ALJ's jobs is to consider Ms. Plainzee's testimony and compare and contrast that to the other evidence in the record, specifically the fact that while Ms. Plainzee complained of fatigue beginning in January 2015, she last claimed of fatigue several months later and by May of 2015 had no more consistent complaints of fatigue. No, and I understand that about the fatigue, but what I'm interested in is it seems to me that if you're out there in the workforce trying to get a job and you keep getting fired or laid off, that strikes me as rather objective evidence that you don't have the wherewithal to maintain work. I mean, that's actually pretty direct, isn't it? And I don't see – I'm just sort of scrolling back up and down through this ALJ opinion. I don't see that particularly addressed. Yes, Your Honor. Sorry, I'm also scrolling the opinion to see what to cite. So the ALJ did consider this evidence. On page 6 and 7 of the ALJ's decision, he states that he considered the fact that she lost jobs due to fatigue and malaise. However, the ALJ was not required to accept those allegations in Ms. Plainzee's testimony to the extent that it was not supported by the other evidence in the record. Had Ms. Plainzee showed consistent complaints of fatigue, had doctors agreed that her fatigue was still disabling, that evidence was missing for the record except for Dr. Koster's opinion. And the ALJ carefully evaluated that opinion and explained, using the factors laid out in 20 CFR 404.1527C, why such an opinion did not hold that much evidentiary value. Right. I mean, so you're referring to this paragraph on page 7. It's kind of a boilerplate-y paragraph where he says, as they so often do, the claimant's medically determinable impairments could reasonably be expected to produce the above-alleged symptoms. However, the claimant's statements concerning the intensity, persistence, et cetera, et cetera. So he doesn't really say he doesn't believe her that she lost the jobs, does he? I mean, we just have this rather generic statement. Your Honor, I believe the rest of the ALJ's decision in great detail speaks of the evidence that does not support Ms. Plainzee's testimony about the extent of her limitations. And in fact, Ms. Plainzee was only 19 years old at the time she alleged she became disabled and only 23 years old at the time the ALJ issued its decision. Well, in a manner of speaking, she's trying to tell us she's been disabled since she was 2, right? She had this juvenile rheumatoid arthritis, which is what they call it when you're a juvenile. Correct, Your Honor. However, the ALJ is really only charged with looking at the period at issue here in this case. Ms. Plainzee applied for disability in 2015, stating that her disability began in June of 2014. She did not apply as a child, and she did not apply under the age of 18. So when looking at the period of issue, the relevant period here, the ALJ looked at the evidence, decided and did not dismiss the fact that she had had all of these problems prior to age 2. But the medical evidence does not actually start until 2013. And at that time, aside from one instance where her inflammation flared up, Ms. Plainzee's inflammation and arthritis was in fact in remission and controlled very well with the medication of Enveril. The ALJ did not ignore the fact that it eventually became ineffective, but then spoke of how additional medications, such as Humira and Orenthia, in fact controlled her arthritis again. The ALJ also looked to the fact that her fatigue was not consistently an issue, at least in statements to her doctors after the spring of 2015, as well as the fact that her heart condition, which she no doubt had at age 2 and was very, very severe, requiring several surgeries. By the time Ms. Plainzee alleged she was disabled and unable to work, her heart condition was mostly stable. Her cardiologists continuously checked on her and did not find any functional limitations were warranted. In fact, her cardiologist, Dr. Wilson, the only doctor to speak of limitations related to her heart problem, said that she should avoid purely isometric activities and long endurance activities. And the ALJ agreed when assessing that she was able to perform less than sedentary work. To Ms. Plainzee's argument regarding the function-by-function analysis  The Commissioner does not dispute in any way that the rulings, the Social Security rulings, and in this case we're discussing Social Security ruling 96-8P, is binding on the ALJ. However, we argue that Ms. Plainzee's reading of that ruling is incorrect and our argument is bolstered by this court's finding in the Jeske case, Jeske v. Saul, decided only a few months ago. And in that case, as well as the case at issue here, the ALJ did not dismiss the functions that Plainzee argues were not addressed. In fact, the ALJ's discussion implies that he considered all of those functions, yet found that she was only able to perform a sedentary range of work with additional postural and environmental limitations. There is no dispute that what the ALJ followed, SSR Social Security ruling 96-8P. Also, when Ms. Plainzee alleges the ALJ did not apply the appropriate factors when evaluating Dr. Koster's opinion, to the contrary, the ALJ specifically discussed the supportability and the consistency of his opinion with treatment notes, objective findings, and other relevant evidence in the record, both of which are factors laid out in 20 CFR 404.1527C. Your Honors, the ALJ decision makes it clear that he also considered the listings to which Ms. Plainzee alleged she was presumptively disabled. While his statements in Step 3 of his decision may have been brief, he did identify the applicable listings, identify the criteria that Ms. Plainzee had to meet in order to meet or medically equal those listings, and his discussion in the rest of his decision clearly explained why those criteria were not met. He relied on the opinion of Dr. Foster, a state agency reviewing physician, who specifically said listing 14.09 addressing inflammatory arthritis was not met, and although he gave Dr. Koster's opinion little weight, he was discussing that more limitations were required. The giving little weight to Dr. Foster's opinion did not negate Dr. Foster's opinion about the listing. Additionally, Ms. Plainzee does not address the opinions of Dr. Koshidi and Dr. Chan, two state agency reviewing physicians, who also opined Ms. Plainzee could perform only sedentary work. The ALJ gave great weight to these decisions. They support the ALJ's assessed residual functional capacity, and because they were not argued either before the district court or before this court here, Ms. Plainzee has waived argument regarding those decisions. Your Honor, in sum, the ALJ's decision addresses Ms. Plainzee's limitations, addresses fatigue specifically, addresses malaise in her heart condition. Although Ms. Plainzee may disagree with the ALJ's conclusion, under the standard of substantial evidence, the ALJ's decision should be affirmed. And if Your Honors have no further questions, the Commissioner rests on his brief. Thank you. Thank you very much. Mr. Scarr, you have about half a minute, so if you have one final point, you may leave us with that. Okay, Your Honor. Just going back to the state agency, they agreed, all state agency assessments agreed that Ms. Plainzee's symptoms of fatigue were consistent with the record. They all stated that in their decisions. In fact, after her stroke, I was going to mention the fact that she's been, again, on blood thinners since that time, and that was not really addressed in the decision. And finally, as far as objective evidence, she, in 2015, went to two cardio appointments to try to figure out the fatigue and had that exercise test that showed she had very, very low exercise tolerance. Okay. Thank you, Your Honor. Well, thank you very much. Thanks to both counsel. We will take this case under advisement.